**In re BLOCH.**
**Patent Appeal No. 3096.**

Court of Customs and Patent Appeals.
June 5, 1933.

D. P. Wolhaupter, of Washington, D. C., for appellant.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office recommending the rejection of appealed claims 1 and 2, allowed by the Primary Examiner, and affirming the decision of the Primary Examiner rejecting appealed claims 13, 14, 15, 16, and 17, contained in appellant's application for a patent for an alleged invention relating to a method, and a machine, for depilating pelts.

Claims 1 and 2 are the only method claims. At the time of the oral argument in this court, counsel for appellant stated that he would not contend that they were patentable. Accordingly, we will not consider them.

Of the remaining claims, claims 15 and 16 are illustrative. They read:

"15. A machine for depilating pelts including a pair of tools for gripping the main part of the hair and a second pair of tools for gripping and tearing off the tips of the hair, both pairs of said tools being adapted to close simultaneously and the plucking tools being adapted to move away from the pair of tools serving for gripping the main part of the hair, whereupon both pairs of tools open and return to their initial position.

"16. A machine for depilating pelts including a pair of tools for gripping the main part of the hair and a second pair of tools for gripping and tearing off the tips, said second pair of tools consisting of a cutter and a rubber roller, the said cutter moving in substantially the path of an ellipse having a curved major axis and carrying the rubber roller around with it while in contacting relation thereto."

Due to the issues in this case, we deem it advisable to quote rather fully from appellant's specification, wherein, among other things, he said:

"The hairs of most pelts have at their outer ends course points or tips which are harder than the actual main part of the hair or under hair and frequently of different colour. As these main parts of the hairs are used for certain purposes, especially in the manufacture of hats, for hair felts, they must previously be freed from the tips by plucking.

"This plucking of the tips is effected while the hair is still on the pelt, partly by hand and partly by machinery, the pelt being held firmly, while the tips are grasped and simply pulled off. In general this operation is carried out without difficulty, as the tips are not attached as firmly to the main part of the hairs as the latter to the skin.

\* \* \* \* \* \*

"The main features of the machine for carrying out this method are:

"(a) A pair of tools for holding the main part of the hair,

"(b) A pair of tools for plucking off the tips.

"According to the invention both pairs of tools are closed and opened again in rapid succession, such that in the first place the main parts of the hairs are gripped below the tips by the gripping tools and held firmly, whereupon the plucking tools seize the tips and pluck them off the firmly held main parts of the hairs.

"The accompanying drawing shows one constructional form of the new machine in section, the parts required for making the invention clear, Fig. 1 showing the holding and the plucking tools open and Fig. 2 the same parts closed.

"The roller 1 acts as a guide for the pelt which is held at both ends by the worker, who

draws it, while stretched tightly, slowly downwards over the roller. The pair of tools for holding the main parts of the hairs consists of the stationary bar 2 and the movable bar 3. The latter performs a rapid succession of upward and downward motions, rests in its lowest position on the stationary bar 2 and thereby grips the hair lying between them.

"Immediately behind the pair of bars 2 and 3 lies the pair of plucking tools consisting of a rubber roller 4 and a cutter 5 the cutting edge of which moves in an ellipse having a curved main axis. In Figs. 1 and 2 this ellipse is shown by a broken line. The cutter first descends until it reaches the roller 4, thereupon moves concentrically to the axis of the roller, carrying the roller round with it, whereupon the cutter is raised from the roller and continues to trace its elliptical path until it returns to its initial position.

"The motions of the two pairs of tools are independent of one another and take place in the following manner. Firstly the two pairs of tools close at the same moment, the main part of the hair being gripped by one pair and the tip of the hair by the other pair of tools, after which the end of the cutter 5 together with the roller 4 moves about the axis of the latter, the tips of the hairs being torn from the hairs themselves. Finally the two pairs of tools open and return to their initial positions, thus releasing the hairs and the tips.

"A suction air passage 6 adjoins the rubber roller 4. The stream of air flowing through the passage draws the hair between the tools which are in the open position and smooths it out so that it can be readily gripped by them. The stream of air also sucks away the torn off tips. The tools described can of course be replaced by other means having a similar action without departing from the spirit of the invention."

The drawings in appellant's application disclose the tools referred to in the quoted description of the invention in their proper relation and position. However, as originally filed, the application did not disclose the necessary machinery by which these parts could be operated. Thereafter, in response to a holding by the Primary Examiner that appellant's claims were rejected "as for an inoperative device and as unsupported by a complete disclosure," appellant amended his application by filing a new sheet of drawings disclosing a complete machine, and a full description of it.

Each of the tribunals below held that the amendment was new matter and a departure from the original invention, and was therefore in violation of rule 70 of the Rules of Practice in the United States Patent Office.

Rule 70 reads as follows: "In original applications all amendments of the drawings or specifications, and all additions thereto, must conform to at least one of them as it was at the time of the filing of the application. Matter not found in either, involving a departure from the original invention, can not be added to the application even though supported by a supplemental oath, and can be shown or claimed only in a separate application."

We agree with the views expressed by the Board of Appeals, that appellant's amendment, showing an apparently new machine, is something more than an illustration of a mechanism, old in the art, by which appellant's alleged invention could be operated. It contains new matter in plain violation of rule 70, and is therefore not a proper part of appellant's application.

The next question requiring our consideration is whether the application, as originally filed, disclosed an operative machine. If it did not, the question arises as to whether the disclosure was sufficient to enable any person skilled in the art to make use of the invention without further experimentation. In re Stauber, 45 F.(2d) 661, 18 C. C. P. A. 774. Section 4888 of the Revised Statutes (U. S. C. title 35, § 31 [35 USCA § 31]).

Each of the tribunals of the Patent Office held that appellant's original disclosure was fragmentary; that it did not disclose an operative machine; and that it was not sufficient to "convey to the public or to those skilled in the art any operative structure by which these fragments of mechanism could be coordinated and caused to perform the operations mentioned."

Obviously, appellant's application, as originally filed, did not disclose an operative machine, and, although it is asserted in the brief of counsel for appellant that the original disclosure was sufficient to enable one skilled in the art to use appellant's alleged invention, there is nothing in the record, nor in the brief of counsel, from which it may be deduced that the Patent Office tribunals were wrong in their holdings in this respect. In the absence of any such showing, we are unable to hold that the concurring decisions of the Patent Office tribunals were manifestly wrong.

The decision of the Board of Appeals is accordingly affirmed.

Affirmed.