**In re TAYLOR et al.**

**Patent Appeal No. 3839.**

Court of Customs and Patent Appeals.
Nov. 22, 1937.

Oswald H. Milmore, of San Francisco, Cal., for appellants.

R. F. Whitehead, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GARRETT, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office affirming a decision of the Examiner denying the patentability of eleven claims, numbered 36 to 46, inclusive, of an application for patent for a process of oil refining. Claims 36 to 39, inclusive, are generic claims. The Examiner classes claims 40 to 42, inclusive, as being "sub-generic to claims 36 to 39 and generic to species of converting the sulphur compounds into sulphur compounds having higher boiling point." Claims 43 to 46, inclusive, are drawn to the species of treating with sulphuric acid. Five claims, numbered 47 to 51, inclusive, are not directly involved in this appeal, they being held by the tribunals of the Patent Office to be "directed to other species which it is believed would become automatically allowable, if generic claims 36–39 are decided to be allowable."

We quote claims 36, 40, and 45:

"36. A process for refining a sulfur-containing petroleum distillate of gasoline boiling range, comprising: sharply fractionating said distillate into a plurality of not substantially overlapping gasoline fractions, at least one of which fractions contains sulfur compounds, separately chemically treating said fraction containing sulfur compounds to convert sulfur compounds into sulfur compounds boiling within the boiling temperature range of one other of said gasoline fractions, separately redistilling said treated fraction to recover the major portion of said treated fraction and eliminate converted sulfur compounds, and blending the redistilled desulfurized portion with another of said gasoline fractions of the distillate having a boiling temperature range including the boiling temperatures of some of the eliminated sulfur compounds."

"40. A process for refining a sulfur-containing petroleum distillate of gasoline boiling range, comprising: sharply fractionating said distillate into a plurality of not substantially overlapping gasoline fractions at least one low boiling fraction of which contains sulfur compounds, separately chemically treating said low boiling gasoline fraction to convert sulfur compounds into compounds having boiling temperatures which fall within the boiling temperature range of a higher boiling gasoline fraction of said distillate, separately redistilling the treated fraction in a manner to recover the major portion of said treated fraction and eliminate converted sulfur compounds, and blending the recovered desulfurized portion with at least one other of said gasoline fractions of the distillate having a boiling temperature range including the boiling temperatures of some of the eliminated sulfur compounds."

"45. A process for refining a sulfur-containing petroleum distillate of gasoline

boiling range, comprising: sharply fractionating said distillate into a plurality not substantially overlapping gasoline fractions, more than one of which contains sulfur compounds, separately treating at least two of said sulfur-containing gasoline fractions with sulfuric acid so as to cause a change in the constitution of the sulfur compounds accompanied by a rise in the boiling temperatures of said sulfur compounds, the boiling temperatures of said converted sulfur compounds being beyond the original boiling temperature ranges of the major portions of the respective treated fractions and within the boiling temperature range of another of said gasoline fractions, separately redistilling said treated fractions to recover the major portions thereof having substantially the same boiling temperature ranges as those of the original fractions and to eliminate converted sulfur compounds, and blending the redistilled portions."

The Examiner rejected the claims at issue upon prior art, and also "as being drawn to an old and exhausted combination." The latter ground was not referred to in the decision of the Board. The prior art references cited are: Robinson, 910,-584, January 26, 1909; Coast, 1,400,800, December 20, 1921; Howard et al., 1,797,145, March 17, 1931; Morrell, 1,827,537, October 13, 1931; Wagner, 1,873,728, August 23, 1932.

All the claims are method claims, and no drawing accompanies the application. The steps comprehended in the process, in the combination of which steps the invention is claimed to reside, are four in number. These we give (supplying the numerals) in the language of the concluding portion of the specification: "[1] producing a number of fractions by distillation, [2] treating some or all fractions to change the volatility of sulfur-bearing components by any of known methods, [3] separating said components from the low-sulfur-containing portions by distillation and [4] thereafter combining the resulting desulfurized portions to produce finished material of low sulfur content."

The brief on behalf of appellants, after a general statement relative to process of distilling petroleum to obtain gasoline, says: "Appellants' invention is particularly concerned *with a method for eliminating sulfur-bearing substances which could not be removed by these old methods of treatment.*" (Italics quoted.)

There was no oral argument before us on behalf of appellants, but an elaborate brief was filed originally, and, by permission of the court, a brief in reply to that of the solicitor for the Patent Office also was filed.

These briefs we have examined with care, and it must be stated that in neither of them does there appear to be specific and definite answers to the adverse findings of the Examiner, approved in all respects, although without detailed discussion as to all of them, by the Board.

It is well settled, of course, that this court will not reverse concurring decisions of the tribunals of the Patent Office unless we are convinced that such decisions are manifestly erroneous, and the burden rests upon the party appealing to point out and convince us of the error, or errors, alleged.

The Examiner gives detailed statements of the features of the prior art deemed by him to be pertinent to the issue, saying, inter alia:

" * * * Morrell teaches the process of separating a distillate of the gasoline range into two or more fractions, treating each fraction separately, and then blending the treated fractions. Attention is particularly directed to lines 17 to 64 and lines 95 to 97, page 2 of Morrell. It is to be noted that Morrell teaches the advisability of redistillation of the chemically treated fractions where thought necessary before blending said fractions. The applicability of Morrell to the claim is apparent. It is conceded that Morrell does not specifically describe the chemical treatment of each fraction in order to convert the sulphur compounds into such compounds which would fall within the boiling range of another fraction, nevertheless, Morrell does teach the desirability of redistillation, and since the main object of the Morrell process is desulphurization it would be obvious that the distillation would be carried out in such a way as to obtain the greatest possible removal of the objectionable sulphur compounds. Distillation for the purpose of more efficient separation of desirable from undesirable components of a fraction simply falls within the domain of any oil refining engineer.

"Wagner separates a distillate into three fractions within the motor fuel range and treats at least two of the fractions separately. Wagner teaches the redistillation

of the separated fractions as noted on page 2, lines 53 to 56, and the blending feature on page 2, lines 99 to 103.

"Robinson 910,584 discloses treating oil from cracked products in separate fractions followed by rerunning before blending to obtain a kerosene product of a very low sulphur content. See page 6, lines 23 to 47 and lines 118 to 122 of Robinson.

"Coast discloses the separation of a distillate into two fractions wherein the heavier fraction is treated with sulphuric acid, redistilled and then blended with the untreated lighter fraction."

The Board did not, in its first decision, enter into details of the prior art, but devoted its discussion largely to a diagram containing two figures which appellants seem to have presented to that tribunal in a brief to illustrate their views of the distinction between their procedure and that of the prior art. This diagram is repeated in the brief before us, it is stated, "For the purpose of aiding the Honorable Court in understanding the decision of the Board of Appeals. * * *" The brief further states that "this figure will not be relied upon in the present appeal. * * *"

Since appellants do not here rely upon that diagram, it is our assumption that they accepted as correct the Board's analysis thereof and answer thereto. Appellants, however, include in their brief before us another diagram consisting of three figures intended to illustrate their argument relative to distillate boiling between certain temperatures, distillation curves, fractionating into a plurality of narrower not substantially overlapping fractions, treating one or more of the fractions chemically, separately redistilling the treated fractions, and, finally, the blending process.

As to claim 45, supra, appellants petitioned the Board for rehearing, pointing out certain limitations which it was claimed clearly distinguished it from the prior art. In denying this petition the Board wrote a second opinion in which appear a number of quotations from the Morrell specification, some of which seem to us to be pertinent not only to the limitations in claim 45, but generally to all the claims.

It is conceded in the brief on behalf of appellants that the specific steps of their process are "individually old," but the insistence is that the claims "are drawn to novel combination steps which mutually co-act to achieve improved results;" that is, as we deduce from the statement of the

brief, quoted supra, the result of "eliminating sulfur-bearing substances which could not be removed by * * * old methods of treatment."

The difficulty which we have in respect to this contention is that of finding just where or how the appellants have combined the admittedly old steps in any novel manner which required the exercise of invention. The brief for appellants emphasizes the fact that it was conceded by the Examiner that "Morrell does not specifically describe the chemical treatment of each fraction in order to convert the sulphur compounds into such compounds which would fall within the boiling range of another fraction."

Also, the brief asserts: "* * * *Appellants' process is a further improvement on Morrell's* in so far as the drastic treatment of the heavier fraction *A* of Morrell can be improved by applying appellants' method, that is by subdividing this fraction by distillation into two or more cuts, acid treating each cut separately to convert sulfur compounds, separately redistilling each treated cut, and combining desulfurized distillates with the alkali treated fraction *B* of Morrell. The sulfur reduction by this method would be still greater than by Morrell's method." (Italics quoted.)

While it is true that the Examiner made the concession, recited supra, it is also true that the chemical treatment of fractions derived from distillation and their redistillation after treatment is admittedly old.

Morrell teaches the treatment of a "condensed fraction" by sulphuric acid, caustic soda, and plumbite, and, "if necessary, a redistillation." The Morrell specification further states: "* * * I have found that these objectionable amounts of sulphur compounds can be more readily removed from the distillate if the distillate is divided into fractions. The reason for this is that the *separated fractions* permit of more intimate contact between the oil and the *desulphurizing agent*. While the reactive types of sulphur compounds may be of the same general series in the several fractions, the *separation* of these fractions permits more *selective* action between the *desulphurizing agent* and the *reactive sulphur compounds*." (Italics ours.)

The foregoing certainly seems to us to justify the holding that Morrell teaches

the chemical treatment of all fractions when necessary to desulphurize. Also, he teaches the following: "After the various fractions have been independently subjected to the necessary refining and desulphurizing treatment, they are recombined and the recombined product is ready for use as a motor fuel."

So it seems to us clear that Morrell teaches the four general steps of (a) fractionating by distillation; (b) chemical treatment of all fractions which require treatment; (c) redistillation after treatment, if necessary; and (d) blending the refined fractions.

It is urged on behalf of appellants that the only redistillation taught by Morrell is that of redistilling the highest boiling fraction, but it is conceded that in his specification Morrell states that some of another fraction may be subjected to a *"light* refining or a *light* desulfurizing action and redistillation" (italics quoted), and it is then argued that such light treatments do not mean the "drastic" treatments of the separate fractions which appellants require.

We find nothing in appellants' claims which specifically names "drastic" treatment. It is supposed that we are asked to infer that "drastic" treatment is necessary in order to convert sulfur compounds into compounds boiling within the boiling range of "one other of the fractions." We do not feel at liberty to draw such an inference but, even if drawn, we are not convinced that Morrell's process fails to comprehend such treatment. Morrell's objective was the same as that of appellants, desulphurization, and we regard as quite pertinent the observation of the Examiner to the effect that it would be obvious to carry out the Morrell process in such a way as to obtain, as nearly as possible, the desired result.

It is noted that in appellants' specification, after describing the treatments declared to be requisite for desulphurizing the fractions, it is said: "It is not always necessary, however, to treat all fractions of the distillate by one of these methods, as some of them, especially those occurring at the lower boiling range, sometimes do not contain a sufficiently high percentage of sulfur to require any other treatment, than a soda or water-wash. In some cases certain fractions may be sweetened by doctor treatment and may not require redistillation. The most effective and/or economical combination of the various treatments can be best ascertained by preliminary tests on a small scale; the method and conditions selected are then reproduced in the plant operation."

No reason is suggested why tests "on a small scale" may not be made in applying the Morrell process, as well as in applying the process of appellants.

It is pointed out in the second decision of the Board that Morrell's specification states: "* * * It is obvious of course, that any number of cuts or fractions may be made in the fractionating tower, and that the fractions or cuts may be taken off separately at varying heights in the fractionating tower, and subjected to only that amount of refining action which will produce the most efficient results. * * *"

In view of all the foregoing, we are unable to agree to the correctness of the contention of counsel for appellants that "Actually, Morrell has stopped where appellants have only begun," but, it may be remarked that, even were this conceded, the question would still remain whether the combination of steps on the part of appellants alleged to be different involves invention, or is merely a matter of mechanical skill.

We have found some difficulty in determining the precise limitations embraced in claim 45, supra, upon which appellants rely to differentiate it in principle, or in any patentable sense, from the other rejected claims.

The brief says: "Claim 45 calls for (a) distilling a gasoline distillate into a plurality of sulfur bearing fractions, (b) separately treating at least two sulfur bearing fractions to produce sulfur compounds boiling beyond the ranges of the original fractions but within gasoline range (c) separately redistilling the treated fractions and (d) blending the redistilled fractions."

Taking the argument in the brief and considering also the statements in the petition for rehearing filed with the Board, it is our conclusion that limitation (b) supra, "separately treating at least two sulfur bearing fractions to produce sulfur compounds boiling beyond the ranges of the original fractions but within gasoline range," comprises the subject-matter upon which the contention is principally based.

We are of the opinion that the teachings of the Morrell patent, already quoted supra, while not specifically stating a treatment of *two* separate fractions, are comprehen-

sive enough to include the treatment of two, or even more. That the use of sulfuric acid is taught by the prior art already has been pointed out, and we are unable to discern wherein appellants teach its use in any new way.

We do not feel under the necessity of analyzing or discussing any other of the references cited, since it seems clear to us that whatever appellants do which differs from Morrell's teachings does not constitute invention. For the same reason, we do not regard it necessary to give especial attention to appellants' claimed result. They claim to have accomplished a higher degree of desulphurization than was accomplished by the prior art. This may be true, although we have no particular evidence of it in the record, but that would not of itself render their process patentable.

We find no error in the holdings below, and the decision of the Board of Appeals is affirmed.

Affirmed.