## KINDELMANN et al. v. MORSBACH et al.
## Patent Appeal No. 3995.

Court of Customs and Patent Appeals.

June 27, 1938.

Emery, Varney, Whittemore & Dix, of New York City (Howard W. Dix, William R. Glisson, and H. W. Baker, all of New York City, and J. Austin Stone, J. Hanson Boyden, and Carl T. Mack, all of Washington, D. C., of counsel), for appellants.

Bailey & Larson, of Washington, D. C. (Roberts B. Larson and Jennings Bailey,

Jr., both of Washington, D. C., of counsel), for appellees.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

LENROOT, Associate Judge.

This appeal brings before us for review a decision of the Board of Appeals of the United States Patent Office affirming a decision of the Examiner of Interferences which awarded priority of invention to appellees with respect to two counts forming the entire issue of the interference. Said counts read as follows:

"1. In a film magazine, the combination of a take-up spool on which film is to be wound, a gate-plate past which the film is to be fed before it reaches the take-up spool, a plate extending from the adjacent end of the gate-plate to a point near the take-up spool, said plate lying closely adjacent the wall of the magazine and forming a passage along which the film passes, the end of the latter plate adjacent the take-up spool being of a predetermined flexibility, the film passing over this flexible end and being automatically maintained in a state of uniform tension as it is wound up on the take-up spool.

"2. In a film holder for motion picture apparatus including a film gate, a guide channel through which the film is moved to said gate by intermittently actuated feeding means, a winding-off spool and a winding-on spool, that improvement, which comprises a resilient member forming a continuation of the inner wall of said guide channel, said member being rigidly fastened in position at the end toward said film-gate and being free at the end toward one of said spools, and being adapted to coincidentally guide the film and to alternately shorten and lengthen successive portions of the film between the guide channel and one of said two spools."

The interference arises between an application of appellants filed on December 17, 1931, and an application filed by appellees on June 4, 1931. Appellees are therefore the senior parties, and the burden was upon appellants to establish priority of invention by a preponderance of evidence.

The involved invention relates to a film magazine for use in a motion picture camera. The general subject matter of the invention is described in appellants' brief as follows: "The invention in issue relates to a film container or magazine which is adapted to be placed in a motion picture camera to avoid loading and threading film in the camera in the usual way. The container carries both a supply spool and a take-up spool, so that the film is at all times carried by the container. The inventive novelty resides in the combination and arrangement in the container of the supply and take-up spools, certain film adjusting springs, a film gate or gate-plate, and in the Kindelmann construction certain additional guides between the gate or gate-plate and the springs."

Both parties filed preliminary statements. Appellants alleged conception of the invention on or about April 25, 1931, disclosure to others on or about April 27, 1931, and actual reduction to practice on or about May 10, 1931.

Appellees alleged that they were citizens of Germany and made the involved invention in that country; that on August 26, 1930, an application was filed in Germany for a patent for the invention; that knowledge of said invention was introduced into the United States in May, 1931, through instructions from appellees' assignee in Germany to a firm of attorneys in New York, soliciting their services in procuring a patent for the invention in the United States.

No testimony was taken by either party.

During the motion period under the rules of the Patent Office, appellants moved to dissolve the interference upon three grounds, viz., that appellees have no right to make the counts, that the counts are not patentable over the prior art, and that one Edwin S. Porter of New York was the original inventor of the device embraced in the counts.

This motion was denied except that, as to count 1, the Primary Examiner held that appellees had no right to make it and that the motion as to said count should be granted.

Appellees appealed to the Board of Appeals from that part of the decision which granted appellants' motion to dissolve as to count 1. The Board of Appeals reversed the decision of the examiner upon said count 1 and held that said count was supported by appellees' disclosure.

Prior to the rendering of said decisions by the Primary Examiner and the Board

of Appeals, appellees moved for judgment upon the record awarding priority to appellees by virtue of appellees' filing date of their German application, August 26, 1930, which was earlier than the earliest date alleged by appellants for conception of the invention.

After said decision of the Board of Appeals, proceedings were resumed by the Examiner of Interferences, and appellees' motion for judgment upon the record was granted, said examiner holding that the counts are supported by appellees' German application.

Appeal was taken to the Board of Appeals, and the decision of the Examiner of Interferences was affirmed. Said board held that both appellees' instant application and their German application support the counts here involved.

There were several motions made by appellants during the course of the interference, in addition to the motion to dissolve, but as no error is assigned in the reasons of appeal with respect to the decisions upon such motions, they will not be further referred to by us.

Two questions are presented for our determination:

1. Whether appellees have the right to make the claims corresponding to the counts, and

2. Whether appellees' German application supports the counts.

The controversy arises over the meaning of the term "gate-plate" used in count 1, and "film gate" used in count 2.

Count 1 originated in appellants' application, and count 2 originated in the application of appellees.

With respect to the element termed "gate-plate" in count 1, the Board of Appeals in its decision stated:

"As to the right of Morsbach et al. to make count 1, attention is directed to our decision of October 2, 1935, (Paper No. 37) which is adopted herein. In that decision we said:

" 'In Kindelmann et al. the stationary guide plate 28 located at the exposure aperture and past which the film travels in its passage from the supply spool 13 to the take-up spool 15 is described as the gate-plate. * * *

" 'It is believed the corresponding stationary guide plate in the Morsbach et al. application may fairly be regarded as a gate-plate in the sense in which this expression is used in the Kindelmann et al. application.'

"Kindelmann et al. urge such reading requires a double inclusion of elements, since Morsbach et al. have only one member 9, 10 which may not be considered both as a gate-plate and as 'a plate extending from the adjacent end of the gate plate to a point near the take-up spool.' It is true that in the Kindelmann et al. application the two plates are formed separately and then mounted in end-to-end relation in the magazine. The count is of sufficient breadth, however, to include a construction in which the two plates are integrally united, or formed of a single member, as in the Morsbach et al. application. The two constructions function in the same manner and we are still of the opinion that it is proper to consider that portion of the Morsbach et al. unitary member 9, 10 which is located at the exposure aperture as a gate-plate and its right hand end portion as the second plate recited in the count."

We are in accord with the foregoing views of the Board of Appeals. While appellees do not disclose, as do appellants, two separate members, one comprising the gate-plate and the other "a plate extending from the adjacent end of the gate-plate to a point near the take-up spool," we call attention to the specification of appellants wherein it is stated, after reciting certain disadvantages of the prior art, as follows: "The herein—invention has eliminated these disadvantages by the provision of a simple, compact unit which can be economically manufactured and placed within the magazine without any substantial alteration of the magazine construction. *This unit may be of one piece or formed of separate elements* but in either case it comprises means for controlling the lateral edges of the film as it is wound up on the take-up spool and also includes means for maintaining in the film during its wind-up as uniform a tension as possible." (Italics added.)

We are of the opinion that the construction disclosed by appellees functions substantially in the same manner as the construction disclosed by appellants, and under the well-established rule that counts in an interference should be construed as broadly as their terms will reasonably permit, it should be held that appellees' application supports count 1.

With respect to count 2, the question is as to the meaning to be given to the term "film gate" in the count. Appellees' specification states as follows: " * * * The film passes from the spool or roll 3 through a guide channel 6 to the film gate or window 7, where the exposure is made and where the film is engaged by the usual feeding claw or equivalent means (not shown) for advancing it, through another guide channel 8, toward the winding-on or take-up spool 5. * * * "

It is appellants' contention that appellees do not disclose a film gate as that term is known in the art, but disclose only an aperture or window. Appellants introduced into the record a number of affidavits made by men prominent in the motion picture industry in support of their contention.

The Primary Examiner, in support of his ruling, upon the motion to dissolve the interference, that appellees to disclose a film gate, as that term is used in the art, stated: "Count 2 originated in the application of Morsbach et al. in which the exposure aperture in a wall of the container was originally referred to in the specification as a film gate. In the patent to Steiner the member 5 shown in Fig. 1 is described as 'provided with the customary opening or film gate and at the same time forms the abutment surface against which the film is pressed.' In Owens the wall of housing 3, shown in Fig. 4, is described in the sentence beginning in line 55, page 1, as 'so formed as to provide a film gate * * * in which is formed an exposure opening 7.' An aperture for the exposure of the film and a film guiding part having a film window as above indicated are known as 'film gates' in the art. The opposing presser plate is not necessary to constitute a film gate. The Morsbach container is provided with an exposure opening in a film guiding face of the container that it is thought is accurately termed a gate and as this is the only feature of Count 2 considered questionable, the party Morsbach et al. clearly has a right to make Count 2."

Upon a request for reconsideration of his holding above referred to, the examiner, in his decision denying such request, cited three additional patents and stated:

"The party Kindelmann et al. contends that the continuation of this interference is improper because the count is not readable on both parties as a window or opening cannot be properly termed a film gate.

"The claim is, however, directed to the same invention in the cases of the respective parties and no valid reason appears for construing the film gate of the introductory clause of the claim to mean other than a window or exposure opening in the enclosure for the film as the gate as included is merely a part past which the film is moved with which no feature of the claim coacts on any particular manner. The gate of Morsbach et al. does hold one side of the film in the desired position for exposure or projection. The gate of the claim in issue does not necessarily include the presser member usually provided to engage the film on the other side to hold the film against the member having the exposure opening. Whether an opposing member is provided to hold the film flat against the walls of the gate member having the opening or whether the film presser member is within the film container or the camera is immaterial to the invention defined by Count 2.

"The patent to Wittel disclosing a presser member 14 within a film container provides an opening 12 in the film holder referred to as a gate aperture and a gate in the first paragraph, page 2.

"In the patent to De Vault fixed member 4 having aperture 5 is referred to as a film gate. The film gate of Sulzer is defined as a plate having an offset aperture in the sentence beginning in line 75 of page 1. Many other patents use the term "film gate" to mean only the member engaging one side of the film having the exposure opening or broadly term the gate aperture as a gate.

"The ordinary dictionary definition of gate as used by Morsbach et al in his specification, the dictionary of his application, in which gate may be either an enclosure provided with an opening or an opening in an enclosure is in accordance with the use of the term in the patented art."

None of the patents referred to in the decisions of the Primary Examiner upon this point are found in the record. Therefore, in accordance with the rule, we must accept the examiner's statement respecting their disclosures as accurate.

There are concurring decisions of the Patent Office tribunals upon a controversial question of fact as to the meaning of the term film gate *as used in the motion picture industry,* and, in accordance with the rule, it is our duty to accept their find-

ing upon this question of fact unless we conclude that they were manifestly wrong with reference thereto. We are not so satisfied, and therefore affirm the decision of the Board of Appeals that appellees' application supports count 2.

The final question is whether appellees are entitled to the date of their German application, August 26, 1930, for conception and reduction to practice of the invention. The only substantial difference between the German and United States applications is that in the German application the term "film gate" is not mentioned, but the structure termed in the United States application a "film gate or window" is termed, in the German application, a "picture window" and "image window." However, the structures described and shown by the drawings in the two applications are substantially identical, and if the structure described in the United States application may properly be termed a film gate, as the Patent Office tribunals have held, and with which holding we agree,

obviously the same term may be applied to the structure shown in the German application.

The foregoing applies to count 2. With respect to count 1, the structures of the United States and German applications are identical, and the same ruling should obtain as to disclosure in the German application as was made with respect to the disclosure in appellees' United States application.

For the reasons stated, we hold that the involved counts are supported by appellees' United States application and also by their German application, and that appellees are entitled to the date of their German application for conception and reduction to practice of the invention. Consequently, they were properly awarded priority of invention with respect to both of the involved counts.

The decision of the Board of Appeals is affirmed.

Affirmed.