27 C.C.P.A.(Patents)

### In re BERTSCH.

### Patent Appeal No. 4217.

### Court of Customs and Patent Appeals.

### Dec. 11, 1939.

Hammond & Littell, of New York City (Charles P. Pollard, of New York City, of counsel), for appellant.

Howard S. Miller, of Washington, D. C., for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

LENROOT, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office affirming a decision of the examiner rejecting all of the claims of appellant's application for a patent, eleven in number, filed July 11, 1934, for want of patentability over the cited prior art. The board also rejected the claims upon the ground that they were not patentably different from claims in patents which had been issued to appellant.

Claims 1 and 7 are illustrative of the nature of the subject matter involved and read as follows:

"1. A process of cleansing soiled materials during laundering thereof, which comprises treating such soiled material with an aqueous solution of a sulfuric acid ester of an aliphatic alcohol corresponding in number of carbon atoms to a fatty acid of a natural fatty or oily material, said ester being substantially free from admixed soap or higher carboxylic acid."

"7. The process claimed in claim 5 in which the cleansing agent consists essentially of sodium lauryl sulfate."

For the purposes of this case it is unnecessary to quote claim 5.

The references cited before the board were:

Ullmann, 1,743,054, January 7, 1930.

Bohme (British), 361,565, November 26, 1931.

Luther, 1,908,376, May 9, 1933.

Luther et al., 1,909,295, May 16, 1933.

Bertsch, 1,968,794, July 31, 1934.

Bertsch, 1,968,795, July 31, 1934.

Friesenhahn, 1,999,629, April 30, 1935.

The board disagreed with the examiner as to the applicability of the references Ullman, Bohme, and Friesenhahn, so those patents require no consideration by us.

The alleged invention, for the purpose of our discussion, is sufficiently described in the quoted claims.

The patent to Luther, No. 1,908,376, relates to the production of sulphonated products. The patent states:

"I have now found that useful sulphonation products can be obtained by sulfonating the single classes of such oxidized paraffin hydrocarbons, waxes and similar materials, such as hard and soft paraffin wax, or montan wax, which, for the sake of brevity, will be referred to in the following and in the claims as paraffinic bodies, from which only the unaltered initial materials have been completely or partially removed. The neutral, unsaponifiable oxidation products may be sulphonated to produce water soluble compounds as well as the highly oxidized, acid oxidation products.

* * *

"The term 'sulphonated', wherever it occurs, is meant to define that the products have been acted upon with a sulphonating agent so that, as is well known in the art, sulphuric esters, or sulphonic acids, or mixtures of both, may be obtained, depending on the nature and quantity of the usual sulphonating agents employed.

"The sulphonation products obtained in this manner can be advantageously employed for the preparation of soaplike products, as for example similar to Turkey-red oil, for use in the textile industry, as emulsifying agents, and the like."

With respect to the definition of the term "sulphonated" above quoted, it appears that this paragraph was inserted in Luther's application on January 4, 1933, and that said application was filed on August 9, 1928.

Claims 5 and 6 of said Luther patent read as follows:

"5. A composition of matter having soaplike and emulsifying properties consisting essentially of a sulphonated mixture of alcohols containing from 10 to 25 carbon atoms obtainable by the liquid-phase oxidation of paraffin wax.

"6. A composition of matter having soaplike and emulsifying properties consisting essentially of a sulphonated mixture of alcohols in which alcohols having from 12 to 20 carbon atoms predominate and which is obtainable by the liquid-phase oxidation of paraffin wax."

The patent to Luther et al., No. 1,909,295, relates to the same general subject as does the patent to Luther. Claims 5 and 6 of this patent read as follows:

"5. A process for producing products of the character of Turkey red oil which comprises oxidizing solid paraffin hydrocarbons in the liquid state until about 50% of the initial material is oxidized, removing the oxidized portion of the intial material by extraction with methanol and acting on

said oxidized portion with a sulphonating agent.

"6. A composition of matter having soaplike and emulsifying properties, consisting essentially of a mixture of sulphuric acid derivatives of aliphatic acids having from 10 to 35 carbon atoms and sulphuric acid derivatives of aliphatic alcohols having from 10 to 25 carbon atoms, said mixture being obtainable by treatment of the oxidation product of the liquid phase oxidation of paraffin with a sulphonating agent."

As hereinbefore stated, the Board of Appeals applied a new ground of rejection of all of the claims, viz., that the claims before us are for an illegal extension of patent monopolies already granted to appellant. With respect to this ground of rejection the board in its decision stated:

"We do not see how claim 1 differs except in phraseology from claim 1 of the Bertsch patent No. 2,046,242 or claims 15 and 17 of the Bertsch patent No. 1,968,795.

"Claim 2 refers to a normal alcohol. The Bertsch patent No. 1,968,795 shows this feature and it is a mere matter of choice to use the normal alcohol.

"Claim 3 refers to a mixture of alcohols. This is claimed in claims 28 and 29 of Bertsch No. 1,968,794 and we see no invention in using the mixture rather than a selected component of the mixture.

"We are satisfied that the inventions of claims 1 to 4 are not patentable over those indicated and claimed in the Bertsch patents.

"The remaining claims refer to the hardness of the water but this feature is referred to in claim 9 of the Bertsch patent No. 2,046,242 which patent is directed to rinsing fibrous materials. These claims refer also to alcohols from cocoanut oil. We see no patentable distinction in 'cleansing soiled fabric'. This patent also states that the calcium and magnesium soaps do not separate.

"Claim 10 requires that the temperature be controlled to prevent precipitation of the hardness causing substances. We see nothing of an inventive character in this feature. If the alcohol used would result in a compound insoluble in cold water the obvious thing to do is to heat the water.

"Claim 11 specifies dodecyl sulphate. The selection of this compound does not appear to be of a critical or inventive nature. We do not find as much in the specification about this compound as there will be found in the Bertsch patent No. 1,968,795. See claim 21 of this patent."

We would here note that the reference to claim 21 of appellant's patent No. 1,968,795 is obviously an error, for a reading of the claims shows that the reference should have been to claim 20, which specifies a sulfuric ester of primary dodecyl alcohol, while claim 21 makes no reference to this chemical element.

These three prior patents issued to appellant were upon applications which were copending with appellant's application before us, and appellant correctly contends that disclosures in such patents not claimed therein may not be resorted to as a ground of rejection of the claims before us. However, as we understand the board's decision, it did not rely upon disclosures not claimed in such patents, but only upon the claims therein and disclosures pertaining thereto.

Appellant's patent No. 1,968,794 relates to a process of making sulphuric reaction products of aliphatic alcohols, and includes both product and process claims. One of the claims, No. 15, is for sodium lauryl sulphate, while claim 7 before us is for the use of such product in cleansing soiled fabrics in hard water. The patent states:

"The preparations which are thus obtained and which largely consist of the products of sulphation or sulphonation of the lauryl alcohol are very stable, very soluble in water, they are quickly acting moistening and foaming bodies which are particularly suitable for textile purposes and for purposes of the leather industry, the pharmaceutical industry, in the art of working metal, for manufacturing insecticides and dust binding media, in ceramics, and as a foaming fire extinguishing medium in which case 5% thereof may be added to a 10% solution of sodium bicarbonate and containing sulphuric acid as a fire extinguishing medium. Also the said preparations may be used wherever moistening, permeating, introducing of active components, emulsifying, cleaning and softening properties or the forming of protective colloids are desired."

Appellant's patent No. 1,968,795 states:

"My invention relates to improvements in moistening, permeating, foaming and dispersing media, and in the process of manufacturing the same."

Claims 15 and 20 of this patent read as follows:

"15. A process for increasing the penetrating and cleansing power of treating, cleaning or detergent agents comprising adding thereto a sulphuric ester of a higher primary fatty alcohol."

"20. A treating bath having high moistening and permeating properties containing a treatment agent and a sulfuric ester of primary dodecyl alcohol."

Appellant's patent No. 2,046,242 relates to a process for preventing the detrimental formation of lime and magnesia soaps. Claim 1 of this patent reads as follows:

"1. In a process of rinsing fibrous materials treated with solutions of fatty acid derivatives unstable towards lime and magnesia salts, the method of preventing the detrimental effects of lime and magnesia soaps remaining as a result of such treatment characterized in that sulphonation products of the primary higher aliphatic alcohols are added to the rinsing liquids."

In none of these patents is there any reference to the products there disclosed being useful in laundering operations.

We are unable to find error by the Board of Appeals upon either of its grounds of rejection of appellant's claims. Some of the questions in connection therewith are technical in character. As to such questions, in so far as there are concurring decisions of the Patent Office tribunals with respect thereto, the rule is applicable that such decisions will not be disturbed unless it appears that they are manifestly wrong. In re Hornsey, 18 C.C. P.A., Patents, 1222, 48 F.2d 911.

The principal question before us is not of a technical nature. It is whether or not, in view of the patents to Luther and the claims of appellant's prior patents, invention was involved in using for laundering purposes the compounds disclosed by Luther and Luther et al. or those embraced in the claims of appellant's patents.

Before passing upon this question, however, we will first consider whether the compounds disclosed by the Luther patents were of the character of those here claimed, and were suitable for laundering purposes and for cleansing soiled fabrics.

We find in the record the following remarks of appellant's counsel following the first rejection of the claims by the examiner:

"In determining the pertinency of the Luther patent No. 1,908,376 in its relation to applicant's claims 1, 4, 5 and 8, three major questions as to its disclosure must be considered: (1) Does the patent disclose the compounds claimed by the applicant? (2) Does it actually disclose the production, properties and use of the compounds which it purports to disclose? (3) Does it disclose the process claimed by the applicant in which the compounds specified in the claims are used?

"As to the first question, the answer must be in the affirmative, for the patent does mention in so many words sulfuric acid esters of alcohols containing at least 10 carbon atoms. As to the second question, the answer must be in the negative, for there are definite indications in the description that the patentee did not produce or isolate sulfuric acid esters of higher molecular alcohols suitable for applicant's process. * * *"

Both Patent Office tribunals found that the products here claimed were disclosed in said Luther patent, and as above indicated this was admitted before the examiner by appellant's counsel. Appellant contends however that a part of this disclosure was through amendments made after the filing date of appellant's copending application, that such amendments constituted new matter, and therefore may not be regarded as prior art inasmuch as they were made after the filing of appellant's applications upon which patents were issued.

The examiner in his statement does not refer to this contention of appellant. The Board of Appeals in its decision referred to it as follows:

"A collateral attack is also made on the validity of the Luther patents. However, we are of the opinion that this attack has no bearing on the patentability of applicant's claims over the Luther patents with the possible exception of claims 7 and 11. Even as to these claims, however, we believe it will be obvious to those skilled in the art to try the lauryl and dodecyl compounds to treat textiles and to wash textiles as is done with Turkey red oil. The production of lauryl alcohol seems to be inherent in the Luther process. Applicant, however, points in claims 5 to 11, inclusive, to the use of hard water in the washing process. The use of hard water is the rule in washing operations and is referred to in the Bertsch patents."

Appellant's counsel insists that he does not attack the validity of the patents to Luther and to Luther et al., but only their availability as references against the claims before us.

We are not convinced that the Luther amendments relied upon by appellant constitute new matter, with the possible exception of the disclosure in such amendments of the lauryl and dodecyl compounds, which are embraced in claims 7 and 11 respectively before us; and as to these compounds we are unable to hold, after carefully considering the argument of appellant's counsel upon this point, that the board erred in holding that it would be obvious to those skilled in the art to try such compounds in the treatment of textiles and to wash textiles, or in holding that the production of lauryl alcohol is inherent in the Luther process.

Holding as we do that the compounds embraced in the claims before us were disclosed in the patents to Luther and to Luther et al., the question is whether the use of such compounds in laundering operations and the cleansing of fabrics involved the exercise of the inventive faculty.

It is true that nowhere does Luther or Luther et al. state that the products disclosed therein are useful for laundering processes. It is stated, however, in patent No. 1,908,376 that the products there disclosed "can be advantageously employed for the preparation of soaplike products, as for example similar to Turkey-red oil, for use in the textile industry, as emulsifying agents, and the like," and his claims include "A composition of matter having soaplike and emulsifying properties." In patent No. 1,909,295 the claims include "A composition of matter having soaplike and emulsifying properties."

■ Assuming that the rule that ordinarily no invention is involved in discovering a new use for an old product is not here applicable, we do not think that, in view of the disclosures of the uses of the products disclosed in said Luther and Luther et al. patents, it would require the exercise of the inventive faculty to use such products in laundering and cleansing operations.

Appellant submitted an affidavit by a chemist setting forth that tests were made of the products disclosed in the Luther and Luther et al. patents, produced by the processes there disclosed, and that it was found that the products produced by such processes had no value as cleansing agents, and were in fact soiling rather than cleansing agents.

The examiner considered this affidavit and stated that it was not convincing and gave his reasons for his conclusion, which it is not necessary for us here to repeat. It is sufficient to say that, after carefully examining the affidavit, we are not satisfied that tests were made of all of the products disclosed by Luther and Luther et al., and which are claimed in the processes embraced in the claims before us.

■ With respect to the rejection by the Board of Appeals of the involved claims upon appellant's prior patents, we agree with the board that the claims before us are not patentably distinct from certain of the claims in said patents.

To illustrate, claim 15 of patent No. 1,968,794 is for the compound sodium lauryl sulphate. Claim 7 in the application before us is for the use of such compound as a cleansing agent with water. In said patent No. 1,968,794 it is stated that the products therein claimed are among other things "particularly suitable for textile purposes," and it is there stated "Also the said preparations may be used wherever moistening, permeating, introducing of active components, emulsifying, cleaning and softening properties or the forming of protective colloids are desired." It seems to us that it is perfectly apparent that in view of the disclosures of the patent, when it expires the public will have the right to use sodium lauryl sulphate for the cleansing of fabrics or for laundering purposes, and to allow claim 7 before us would in effect be an illegal extension of the monopoly granted by said patent.

What we have said with respect to claim 7 is, we think, equally true of the other claims before us. The Board of Appeals in its decision considered each of the rejected claims and applied them to the claims of appellant's prior patents, and we are not satisfied that it erred in its conclusion with respect thereto.

For the reasons hereinbefore stated the decision of the Board of Appeals is affirmed.

Affirmed.