30 C.C.P.A.(Patents)

### PAULSON v. HYLAND.

### Patent Appeal No. 4691.

Court of Customs and Patent Appeals.
June 1, 1943.

Harry A. Yerkes, Jr., of New York City (Lee B. Kemon, of Washington, D. C., of counsel), for appellant.

Commander R. A. Lavender, U. S. N., and Cameron, Kerkam & Sutton, all of Washington, D. C. (Loyd H. Sutton, T. Hayward Brown, and Gordon W. Daisley, all of Washington, D. C., of counsel), for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

LENROOT, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office in an interference proceeding No. 73,561, affirming a decision of the Examiner of Interferences awarding priority of invention to the party Hyland with respect to all of the counts in issue, five in number.

The interference is between two applications of Hyland, one filed on October 8, 1928, and the other July 1, 1929, and an application of Paulson filed on July 15, 1929.

Paulson is the junior party and the burden was upon him to establish priority by a preponderance of evidence. It appears that Hyland was, during the period that is here material, an assistant radio engineer at the Naval Research Laboratory located at Washington, D. C., and that Paulson was chief engineer of the B. G. Corporation, a manufacturer of airplane spark plugs, to which his application has been assigned.

The general subject matter involved is the same as is involved in Patent Appeals Nos. 4689, Shumaker v. Paulson and 4690, Paulson v. Hyland, 30 C.C.P.A., Patents, —, 136 F.2d 686, concurrently decided herewith.

Counts 1, 2 and 3 embody a modification of the invention involved in the cases last above cited, while counts 4 and 5 are for substantially the same invention as was considered in said last cited cases.

Counts 1 and 4 are illustrative and read as follows:

"1. In combination with a spark plug body, a center electrode therein, insulating means interposed between the electrode and body and adapted to maintain said electrode in operative position, said insulating means being so formed as to provide a pocket above the upper end of the center electrode, a shielded insulator member having a portion thereof projecting into said pocket, a shielded cable extending into a recess in said insulator member, and means for establishing an electrical connection between the center electrode and cable, the shields of said cable and said insulator being electrically connected with said body."

"4. In a shielded spark plug, the combination of an insulated spindle, a body in which said spindle is fixed, a metal barrel extending from the body above the spindle to form a socket and part of the shielding of the plug, an insulated high-tension conductor insertable into said socket to make electrical connection with said spindle, a metallic sheath about said conductor outside the spark plug, a metal connection through which the insulated conductor is passed and to which said sheath is connected, said connection having detachable engagement with said barrel, a tip piece fastened to the conductor wire, and an insulating sleeve about the portion of the insulated conductor within the socket, said sleeve being located between said tip piece and said detachable connection."

Counts 1, 2 and 3 correspond to claims in Hyland's application filed July 1, 1929, and counts 4 and 5 correspond to claims in Hyland's application filed October 8, 1928.

The feature distinguishing the first three counts here involved from the counts involved in Appeals Nos. 4689 and 4690, supra, relate to what is termed by the parties an "elbow" plug, in which the shielded portion of the plug forms an angle to the main axis of the electrode.

Both parties took testimony.

As there was concurrence of the Patent Office tribunals upon the questions of fact involved, the rule is here applicable that their findings of fact will be accepted by us unless they are manifestly wrong.

The Board of Appeals in its decision stated:

"Counts 1, 2 and 3 appear to relate to an elbow plug in which the shielded portion of the plug forms an angle to the main axis of the electrode, while counts 4 and 5 relate to a straight shielded plug, concerning which the proofs for Paulson and Hyland were more specifically discussed in the companion Interference No. 69,428 where it was held that Hyland Exhibit 60 showed prior conception before any date which could be awarded Paulson, the junior party, and that Hyland was diligent from that date until his date of constructive reduction to practice evidenced by the filing of his application, Serial No. 311,354, on October 9, 1928. The examiner points out that Hyland is relying on the same evidence to establish priority as to counts 4 and 5 in this contest.

"It appears that Hyland Exhibit 60 supports the subject matter in issue as to the elements recited by counts 4 and 5 and for the reasons given in our decision being rendered concurrently herewith in companion Interference No. 69,428, Hyland is entitled to priority on these counts."

Paulson's reasons of appeal with respect to counts 4 and 5 are identical with his reasons of appeal in Interference 69,428, Appeals No. 4689 and No. 4690, supra, and our decision here is controlled by our decision in those cases.

Therefore the decision of the board with respect to counts 4 and 5 will be affirmed.

We next proceed to the consideration of counts 1, 2 and 3.

The Examiner of Interferences found a date for conception by Hyland of the invention as defined in counts 1 and 3 as of August 21, 1928, and as defined in count 2 as of March 28, 1929. These dates are conceded to Hyland by Paulson.

The Examiner of Interferences did not find any date to which Paulson was entitled for conception of the invention, but found that he had not established an actual reduction to practice prior to his filing date, and assuming that he was first to conceive the invention, he had not shown diligence in reducing it to practice. He therefore awarded priority of invention as to counts 1, 2 and 3 to Hyland.

The Examiner of Interferences made no finding as to any actual reduction to practice by Hyland, or with respect to his diligence in that regard.

The Board of Appeals affirmed the decision of the Examiner of Interferences.

Paulson in his reasons of appeal does not challenge the finding with respect to lack of diligence by him, and all of his reasons of appeal relate to alleged error in holding that he had not established actual reduction to practice of the invention.

Therefore, the question of actual reduction to practice of the invention defined by counts 1, 2 and 3 will be the only question considered by us.

While Paulson's brief raises the question of Hyland's diligence in reducing to practice the invention defined in counts 1, 2 and 3, this is not mentioned in his reasons of appeal with respect to these counts, and in any event such question could not arise unless it should be held that Paulson actually reduced the invention to practice prior to Hyland's filing date. If Paulson did not so reduce to practice, and if Hyland was the first to conceive, he was the first to constructively reduce the invention to practice, while if Paulson was the first to conceive but the last to reduce to practice, his lack of diligence in reducing to practice as held by the Patent Office tribunals and not raised in Paulson's reasons of appeal would prevent his receiving an award of priority of invention.

While the testimony shows the testing of certain elbow plugs by the United States Army Air Corps and by the Pratt and Whitney Company, the Examiner of Interferences held that it was not shown that any of these tests demonstrated that they were satisfactory from a radio shielding standpoint. The board did not specifically refer to these tests. With respect to them it is sufficient to say that the Examiner of Interferences was clearly right in his said holding.

Paulson, in his reasons of appeal, alleges error in holding that proof of radio shielding was necessary, in view of the fact that his earlier straight type of radio shielded plugs had been successfully tested for radio shielding on June 26, 1928. This reference no doubt is to the radio shielded plugs, the subject of Appeals 4689 and 4690, supra.

However, in his brief Paulson's counsel does not mention this reason of appeal nor challenge the finding that a test of radio shielding was essential. We assume that this reason was abandoned by counsel, but in any event we are convinced that such test of radio shielding was necessary in order to actually reduce to practice the invention.

Paulson's chief contention is that in January 1929, under a contract with the Navy there was received at the Naval Air Station at San Diego, California, several hundred shielded spark plugs of the elbow construction embodying the involved invention, shipped by the B. G. Corporation; that a set of such plugs was forthwith installed upon an airplane and tested by Commander DeBaun during 196 hours of flying covering over 20,000 miles, and were found perfectly satisfactory for shielding.

That a set of elbow type spark plugs furnished to the Navy by the B. G. Corporation was successfully tested, including radio shielding, by DeBaun is, we think, fully established by the evidence, and as we view their decisions both of the Patent Office tribunals so held. Both of such tribunals, however, held that there was not sufficient corroboration as to the identity of the spark plugs tested to warrant a finding of actual reduction to practice of the involved invention. None of the plugs tested by DeBaun were offered in evidence.

The contract under which these spark plugs were furnished to the Navy is in the record, but there is no description therein of the internal construction of the plugs.

The only evidence in the record upon the subject of whether the plugs tested by Commander DeBaun responded to the counts here involved is the testimony of Paulson and DeBaun, and a physical exhibit, Paulson's Exhibit 53, which the Patent Office tribunals apparently assumed embodied the invention here involved.

With respect to the sufficiency of Paulson's evidence to establish that the plugs tested by the Navy embodied the involved invention, the Examiner of Interferences in his decision stated:

"Paulson's contention is that plugs similar to Paulson Exhibit 53 were sold to the U. S. Navy in January of 1929, under a Navy contract (Paulson exhibit 59) as testified to by Commander Price USN. and that these plugs were used extensively and successfully at that time as testified to by DeBraun, a navy pilot who is alleged to have used them in flight while certain radio tests were made.

"However, none of the documentary evidence (Paulson exhibits 59, 28, 60, 61) connected with the acquisition by the Navy of plugs allegedly like Paulson exhibit 53 definitely identifies these devices as structures which might completely support the counts in issue. Paulson, himself, was not too definite in identifying such plugs (Paulson record, page 185, Q602) and all that DeBraun could say was that Paulson exhibit 53 'looks like one of them' (Paulson record, page 366, Q86), while Price's statement as to the success of their use is clearly no more than hearsay (Paulson record, page 381, Q34).

"Hence, Paulson exhibit 53 is held not to have been established as a successful reduction to practice for lack of sufficient corroboration as to the identity and extent of use of the device allegedly tested."

Paulson's testimony respecting the spark plugs delivered under said Navy contract, and referred to in the above quotation is as follows:

"Q602. Can you testify concerning the construction of shielded spark plugs which were delivered under this contract? A. All of the plugs delivered under this contract were of the 1-XA type with bakelite filled elbow and terminal sleeve construction, shown in Exhibit No. 53, as far as I can tell without sectioning Exhibit 53.

"The early plugs on this contract, as I remember it, had the black or earlier type of bakelite insulation, while some of the later shipments used the mixture designated by the Bakelite Corporation, I believe, as XM-1000."

The testimony of DeBaun upon this point is as follows:

"Q82. Were these plugs of the same construction as those that you had pre-

viously tested at Anacostia? A. No, they did not look the same. Apparently their interior construction was not exactly the same. They had elbows on them.

"Q83. These were elbow plugs? A. Elbow or angle plugs. I don't know what it was called.

"Q84. Are you certain that they were of B. G. manufacture? A. I am.

"Q85. Do you know how they were designated by the manufacturer? A. I don't recall. They were still, however, on the same 1-XA base construction. I mean, they had been built around that plug.

"Q86. Can you identify such a plug from among the exhibits before you that are in evidence in this proceeding? A. This looks like one of them (indicating).

"Mr. Kemon: The witness refers to Paulson Exhibit No. 53."

The Board of Appeals upon this point in its decision stated: "Paulson points to DeBaun's testimony as to the use of elbow plugs in the period of January and February, 1929 on page 172 of his brief. The position of Paulson as to these exhibits used by DeBaun in the early part of 1929 was considered in detail in our decision being rendered concurrently herewith in companion case, Interference No. 73,630, to which reference is made, in which the Examiner of Interferences is affirmed in his holding that Paulson's evidence as to reduction to practice by DeBaun was lacking in sufficient corroboration as to the identity and extent of use with his Exhibit 53 which had been constructed but not tested."

Interference 73,630, referred to in said quotation is also before us in Appeals Nos. 4695, Paulson v. Mascuch, and 4696, Hyland v. Mascuch, 30 C.C.P.A., Patents, ——, 136 F.2d 706, concurrently decided by us. In its decision in that interference to which the board in this case made reference, the question of identity of the elbow spark plugs tested by the Navy was discussed in detail. The board concluded such discussion with the following statement:

"It appears that the plugs identified by DeBaun and described by him were tested according to his testimony and were satisfactory, but the examiner's position seems to be that it is not conclusively stated by the witness that the plugs tested by him were the same as Exhibit 53 and that his testimony is indicative of this uncertainty when he answered that this looks like one of them.

"It is considered that the examiner's holding that Paulson Exhibit 53 has not been established as a successful reduction to practice for lack of sufficient corroboration as to the identity and extent of use of the device cannot be held to be reversible error."

In view of the foregoing we cannot hold that the Patent Office tribunals were manifestly wrong in holding that the evidence fails to establish that the spark plugs tested by the Navy supported all of the elements of counts 1, 2 and 3, or all of the elements of any one of them.

The elbow spark plugs furnished to the Navy *may* not in some particular have responded to the counts before us, and if they did it would seem that evidence would have been available to Paulson which would have conclusively established the facts.

▇▇▇ We therefore are unable to hold that the Patent Office tribunals were clearly wrong in holding that it has not been established that the elbow spark plugs tested by the Navy embodied the here involved invention, and therefore the award of priority of invention to Hyland must be affirmed.

For the reasons stated, the decision of the Board of Appeals is affirmed with respect to all of the counts, viz., counts 1, 2, 3, 4 and 5.

Affirmed.