### In re ANHALTZER.
### Patent Appeal No. 2672.

Court of Customs and Patent Appeals.
April 15, 1931.

John E. Jackson, of New Orleans, La. (Edward W. Shepard, of Washington, D. C., of counsel), for appellant.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

HATFIELD, Associate Judge.

■ This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the decision of the Primary Examiner rejecting all of the claims in appellant's application for a patent for an alleged invention relating to a food product and a method of making the same.

The involved claims read as follows:

"7. A dry food product composed mainly of malt and sugar and having small amounts of cornstarch, casein, sodium chloride, calcium lacto phosphate, calcium sucrate, calcium phospho sucrate, and magnesium phospho sucrate, said product being the result of forming a mixture of from 50 to 60 per cent. malt extract, 25 to 45 per cent. cane sugar, 3 to 4 per cent. cornstarch, .75 to 2.25 per cent. hop extract, .50 to 1.50 per cent. casein, .25 to .75 per cent. calcium sulfate, .25 to .75 per cent. sodium chloride, .125 to .325 per cent. powdered milk, and .03 to .06 per cent. magnesium sulfate, heating said ingredients while they are being mixed, and then drying said mixture by heating said mixture in vacuo.

"8. In the manufacture of concentrated food products of the class described, the steps consisting of forming a mixture composed of from 50 to 60 per cent. malt extract, 25 to 45 per cent. cane sugar, 3 to 4 per cent. cornstarch, .75 to 2.25 per cent. hop extract, .50 to 1.50 per cent. casein, .25 to .75 per cent. calcium sulfate, .25 to .75 per cent. sodium chloride, .125 to .375 per cent. powdered milk and .03 to .06 per cent. magnesium sulfate, agitating said mixture while maintaining it at a temperature of not under 30 and not over 60 degrees Centigrade so as to cause said calcium sulfate to be dissolved by said sodium chloride and the lactic acid of the malt and milk and thereby react

and combine with the sugar contents of said mixture and also with the phosphate of said malt extract and with at least some of the lactic acid to form calcium sucrate, calcium phospho sucrate, and calcium lacto phosphate, and said magnesium sulfate being caused to combine and react with the sugar content of said mixture and with a phosphate of said malt extract to form magnesium phospho sucrate, then desiccating the product resulting from said mixture in vacuo, then cooling the desiccated mixture, and then comminuting the cooled mixture."

The references are: Horlick, 278,967, June 5, 1888; Rollheuser, 596,945, January 4, 1898; Dodd, 620,645, March 7, 1898; Elger, 1,100,176, June 16, 1914; Barwell, 1,409,435, March 14, 1922.

The character of the product and the method of producing the same is clearly set forth in the claims.

The Primary Examiner held that the applicant had "merely selected and assembled substances which are old in the same relation, i. e., as beverage constituents and united them in a single compound; and it does not appear that any unusual or unobvious co-operative relationship exists among the respective ingredients nor does it appear that the steps of the process involve and [an] unobvious procedure for the preparation of a product of the kind herein disclosed."

In affirming the decision of the Primary Examiner, the Board of Appeals, among other things, said: "The patents to Dodd and Horlick show that malt and starch have been used in beverages or foods and that the starch is converted under the action of the heat into dextrin and maltose or grape sugar. The patent to Elger mixes malt extract with casein calcium which prevents hygroscopic action and mold. It is well known that cane sugar, sodium chloride and powdered milk are used in beverages and this leaves only calcium and magnesium sulphate unaccounted for. These ingredients are added, according to the specification, as antiseptics to destroy bacteria."

The Board further said that it was unable to find any authority to the effect that calcium and magnesium sulphates possessed the properties claimed in appellant's application.

Thereafter, appellant filed a petition for rehearing in which it was pointed out that calcium and magnesium sulphates have antiseptic properties and have been used for such properties in medical and chemical sciences; that "calcium sulfate when dissolved will combine with sugar to form calcium sucrate, and with phosphate and lactic acid to form calcium phospho sucrate and calcium lacto phosphate, * * * That magnesium sulfate will combine and react with sugar and phosphate to form magnesium phospho sucrate"; that "magnesium phosphal sucrate" is a laxative and digestive; that calcium is a bone and tissue builder; and that magnesium phosphate is readily formed in mixtures such as claimed in appellant's application.

In support of the above statement, counsel for appellant cited the following authorities: "Materia Medica and Therapeutics—Fourth Edition—Shoemaker—published by the F. A. Davidson Company, Dictionary of Applied Chemistry—Thorpe—Vols. 1 and 3, and General and Industrial Chemistry—Molinari."

The petition for rehearing was denied by the Board of Appeals.

It is contended by counsel for appellant that the involved product is new; that it results from the application of a novel method of manufacture, whereby "certain chemical reactions are caused to take place forming calcium sucrate, calcium phospho sucrate, calcium lacto phosphate and magnesium phospho sucrate, all of which are compounds not even suggested by the references and compounds not possible to form by combining any or all of the ingredients of any or all of the references"; and that appellant has produced a bacteria proof product possessing both medical and food values heretofore unknown.

■ Counsel for appellant attached to his brief copies of affidavits. In view of the fact that they were not presented to, and were not considered by, the tribunals of the Patent Office, this court will not consider them. In re Fisher, 37 F.(2d) 628, 17 C. C. P. A. 864.

In his petition for rehearing, filed with the Board of Appeals, counsel for appellant said: "The chemistry involved in this application is complicated and beyond the grasp of those not skilled in the art as set forth in the specification and claims."

■ In cases involving intricate and highly technical questions, especially in the absence of the evidence of those expert in the art, concurring decisions of the Patent Office tribunals will not be disturbed, unless it appear that they are manifestly wrong. Stern et al. v. Schroeder et al., 36 F.(2d) 515, 17 C. C. P. A. 670; Stern et al. v. Schroeder et al., 36 F.(2d) 518, 17 C. C. P. A. 690;

Beidler v. Caps, 36 F.(2d) 122, 17 C. C. P. A. 703; Clancy v. DeJahn, 36 F.(2d) 131, 17 C. C. P. A. 714; In re Moulton, 38 F.(2d) 359, 17 C. C. P. A. 891; In re Demarest, 38 F.(2d) 895, 17 C. C. P. A. 904; In re Wietzel, 39 F.(2d) 669, 17 C. C. P. A. 1079; Pengilly v. Copeland, 40 F.(2d) 995, 17 C. C. P. A. 1143.

It is true that the references cited by the tribunals of the Patent Office do not show the use of calcium and magnesium sulphates in combination with other substances for producing food products, nevertheless, the authorities cited by counsel for appellant disclose that the use of calcium and magnesium sulphates in combination with other substances for the precise purposes claimed by appellant is old in the art.

We are in accord with the conclusion reached by the tribunals of the Patent Office, and, for the reasons stated, the decision of the Board of Appeals is affirmed.

Affirmed.