Justice Breyer
delivered the opinion of the Court.
The Administrative Procedure Act (APA) sets forth standards governing judicial review of findings of fact made by federal administrative agencies. 5 U. S. C. §706. We must decide whether §706 applies when the Federal Circuit reviews findings of fact made by the Patent and Trademark Office (PTO). We conclude that it does apply, and the Federal Circuit must use the framework set forth in that section.
I
Section 706, originally enacted in 1946, sets forth standards that govern the “Scope” of court “review” of, e.g., agency factfinding (what we shall call court/agency review). It says that a
“reviewing court shall—
“(2) hold unlawful and set aside agency . . . findings ... found to be—
“(A) arbitrary, capricious, [or] an abuse of discretion, or...
“(E) unsupported by substantial evidence in a ease subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute;...
*153 “In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party ...
Federal Rule of Civil Procedure 52(a) sets forth standards that govern appellate court review of findings of fact made by a district court judge (what we shall call court/court review). It says that the appellate court shall set aside those findings only if they are “clearly erroneous.” Traditionally, this eourt/court standard of review has been considered somewhat stricter (i. e., allowing somewhat closer judicial review) than the APA’s court/agency standards. 2 K. Davis & R. Pierce, Administrative Law Treatise §11.2, p. 174 (3d ed. 1994) (hereinafter Davis & Pierce).
The Court of Appeals for the Federal Circuit believes that it should apply the “clearly erroneous” standard when it reviews findings of fact made by the PTO. In re Zurko, 142 F. 3d 1447, 1459 (1998) (ease below). The Commissioner of Patents, the PTO’s head, believes to the contrary that ordinary APA court/agency standards apply. See, e. g., In re Kemps, 97 F. 3d 1427, 1430-1431 (CA Fed. 1996); In re Napier, 55 F. 3d 610, 614 (CA Fed. 1995); In re Brana, 51 F. 3d 1560, 1568-1569 (CA Fed. 1995).
The case before us tests these two competing legal views. Respondents applied for a patent upon a method for increasing computer security. The PTO patent examiner concluded that respondents’ method was obvious in light of prior art, and so it denied the application. See 35 U. S. C. § 103 (1994 ed., Supp. III). The PTO’s review board (the Board of Patent Appeals and Interferences) upheld the examiner’s decision. Respondents sought review in the Federal Circuit, where a panel treated the question of what the prior art teaches as one of fact, and agreed with respondents that the PTO’s factual finding was “clearly erroneous.” In re Zurko, 111 F. 3d 887, 889, and n. 2 (1997).
The Federal Circuit, hoping definitively to resolve the review-standard controversy, then heard the matter en banc. *154 After examining relevant precedents, the en bane court concluded that its use of the stricter court/court standard was legally proper. The Solicitor General, representing the Commissioner of Patents, sought certiorari. We granted the writ in order to decide whether the Federal Circuit’s review of PTO factfinding must take place within the framework set forth in the APA.
rH 1 — I
The parties agree that the PTO is an “agency subject to the APA’s constraints, that the PTO’s finding at issue in this case is one of fact, and that the finding constitutes “agency action.” See 5 U. S. C. §701 (defining “agency” as an “authority of the Government of the United States”); § 706 (applying APA “Scope of review” provisions to “agency action”). Hence a reviewing court must apply the APA’s court/agency review standards in the absence of an exception.
The Federal Circuit rests its claim for an exception upon §559. That section says that the APA does “not limit or repeal additional requirements . .. recognized by law.” In the Circuit’s view: (1) at the time of the APA’s adoption, in 1946, the Court of Customs and Patent Appeals (CCPA), a Federal Circuit predecessor, applied a court/court “clearly erroneous” standard; (2) that standard was stricter than ordinary court/agency review standards; and (8) that special tradition of strict review consequently amounted to an “additional requirement” that under §559 trumps the requirements imposed by §706.
Recognizing the importance of maintaining a uniform approach to judicial review of administrative action, see, e. g., Universal Camera Corp. v. NLRB, 340 U. S. 474, 489 (1951); 92 Cong. Rec. 5654 (1946) (statement of Rep. Walter), we have closely examined the Federal Circuit’s claim for an exception to that uniformity. In doing so, we believe that respondents must show more than a possibility of a height *155 ened standard, and indeed more than even a bare preponderance of evidence in their favor. Existence of the additional requirement must be clear. This is suggested both by the phrase “recognized by law” and by the congressional specification in the APA that “[n]o subsequent legislation shall be held to supersede or modify the provisions of this Act except to the extent that such legislation shall do so expressly.” § 12, 60 Stat. 244, 5 U. S. C. §559. A statutory intent that legislative departure from the norm must be clear suggests a need for similar clarity in respect to grandfathered common-law variations. The APA was meant to bring uniformity to a field full of variation and diversity. It would frustrate that purpose to permit divergence on the basis of a requirement “recognized” only as ambiguous. In any event, we have examined the 89 cases which, according to respondents and supporting amici, embody the pre-APA standard of review. See App. to Brief for New York Intellectual Property Law Association as Amicus Curiae 1a-6a (collecting eases), and we conclude that those cases do not reflect a well-established stricter court/court standard of judicial review for PTO factfinding, which circumstance fatally undermines the Federal Circuit’s conclusion.
The 89 pre-APA eases all involve CCPA review of a PTO administrative decision, which either denied a patent or awarded priority to one of several competing applicants. See 35 U. S. C. § 59a (1934 ed.) (granting CCPA review authority over PTO decisions); 35 U. S. C. § 141 (current grant of review authority to the Federal Circuit). The major consideration that favors the Federal Circuit’s view consists of the fact that 23 of the cases use words such as “clear case of error” or “clearly wrong” to describe the CCPA’s review standard, while the remainder use words such as “manifest error,” which might be thought to mean the same thing. See App. to Brief for New York Intellectual Property Law Association as Amicus Curiae 1a-6a. When the CCPA decided many of these eases during the 1930’s and early 1940’s, *156 legal authorities had begun with increasing regularity to use the term “clearly erroneous” to signal court/court review, Fed. Rule Civ. Proc. 52(a) (adopted in 1987), and the term “substantial evidence” to signal less strict court/agency review. Stern, Review of Findings of Administrators, Judges and Juries: A Comparative Analysis, 58 Harv. L. Rev. 70, 88 (1944) (describing congressional debates in which members argued for and against applying the “clearly erroneous” standard to agency review “precisely because it would give administrative findings less finality than they enjoyed under the ‘substantial evidence* rule”).
Yet the presence of these phrases is not conclusive. The relevant linguistic conventions were less firmly established before adoption of the APA than they are today. At that time courts sometimes used words such as “clearly erroneous” to describe less strict court/agency review standards. See, e. g., Polish National Alliance v. NLRB, 136 F. 2d 175, 181 (CA7 1943); New York Trust Co. v. SEC, 131 F. 2d 274, 275 (CA2 1942), cert. denied, 318 U. S. 786 (1943); Hall v. Commissioner, 128 F. 2d 180, 182 (CA7 1942); First National Bank of Memphis v. Commissioner, 125 F. 2d 157 (CA6 1942) (per curiam); NLRB v. Algoma Plywood & Veneer Co., 121 F. 2d 602, 606 (CA7 1941). Other times they used words such as “substantial evidence” to describe stricter court/ court review (including appeals in patent infringement cases challenging district court factfinding). See, e. g., Cornell v. Chase Brass & Copper Co., 142 F. 2d 157, 160 (CA2 1944); Dow Chemical Co. v. Halliburton Oil Well Cementing Co., 139 F. 2d 473, 475 (CA6 1943), aff'd, 324 U. S. 320 (1945); Gordon Form Lathe Co. v. Ford Motor Co., 133 F. 2d 487, 496-497 (CA6), aff’d, 320 U. S. 714 (1943); Electro Mfg. Co. v. Yellin, 132 F. 2d 979, 981 (CA7 1943); Ajax Hand Brake Co. v. Superior Hand Brake Co., 132 F. 2d 606, 609 (CA7 1943); Galion Iron Works & Mfg. Co. v. Beckwith Machinery Co., 105 F. 2d 941, 942 (CA3 1939). Indeed, this Court itself on at least one occasion used the words “substantial evidence” *157 to explain why it would not disturb a trial court’s factual findings. Borden’s Farm Products Co. v. Ten Eyck, 297 U. S. 251, 261 (1986); see also Great Atlantic & Pacific Tea Co. v. Grosjean, 301 U. S. 412, 420 (1937) (accepting trial court’s findings of fact because they have “substantial support in the record”).
Nor is the absence of the words “substantial evidence” in the CCPA’s eases especially significant. Before the APA, the use of that term to describe court/agency review proceeded by fits and starts, with the standardization of the term beginning to take hold only after Congress began using it (or the like) in various federal statutes. For example, this Court first used the phrase “substantial evidence” in the agency context to describe its approach to the Interstate Commerce Commission’s (ICC’s) factual findings, ICC v. Union Pacifijc R. Co., 222 U. S. 541, 548 (1912), even though the underlying statute simply authorized a court of competent jurisdiction to suspend or set aside orders of the Commission, § 12, 36 Stat. 551. The Court did not immediately grant the Federal Trade Commission the same leeway it granted the ICC, see FTC v. Curtis Publishing Co., 260 U. S. 568, 580 (1923), even though the underlying Act used language to which the phrase “substantial evidence” might have applied, see §5,38 Stat. 720 (the “findings of the commission as to the facts, if supported by testimony, shall be conclusive”). As the words “substantial evidence” began to appear more often in statutes, the Court began to use those same words in describing review standards, sometimes supplying the modifier “substantial” when Congress had left it out. See, e. g., Consolidated Edison Co. v. NLRB, 305 U. S. 197, 229 (1938); see Stason, “Substantial Evidence” in Administrative Law, 89 U. Pa. L. Rev. 1026, 1026-1028 (1941) (collecting statutes); see also Dobson v. Commissioner, 320 U. S. 489, 499 (1943) (speaking generally of the “theoretical and practical reasonfs] for . . . [crediting] administrative decisions”). The patent statutes, however, did not and do not *158 use the term “substantial evidence” or any other term to describe the standard of court review. 35 U. S. C. §§ 61, 62 (1934 ed.). Indeed, it apparently remains disputed to this day (a dispute we need not settle today) precisely which APA standard — “substantial evidence” or “arbitrary, capricious, abuse of discretion” — would apply to court review of PTO factfinding. See 5 U. S. C. §706(2)(E) (applying the term “substantial evidence” where agency factfinding takes place “on the record”); see also Association of Data Processing Service Orgs., Inc. v. Board of Governors of Federal Reserve System, 745 F 2d 677, 683-684 (CADC 1984) (Sealia, J.) (finding no difference between the APA’s “arbitrary, capricious” standard and its “substantial evidence” standard as applied to court review of agency factfinding.)
Further, not one of the 89 opinions actually uses the precise words “clear error” or “clearly erroneous,” which are terms of art signaling court/court review. Most of the 89 opinions use words like “manifest error,” which is not now such a term of art.
At the same time, precedent from this Court undermines the Federal Circuit’s claim that the phrases “clearly wrong” or “manifest error” signal court/court review. The Federal Circuit traced its standard of review back to Morgan v. Daniels, 153 U. S. 120 (1894), which it characterized as the foundation upon which the CCPA later built its review standards. 142 F. 3d, at 1453-1454. We shall describe that case in some detail.
Morgan arose out of a Patent Office interference proceeding — a proceeding to determine which of two claimants was the first inventor. The Patent Office decided the factual question of “priority” in favor of one claimant; the Circuit Court, deciding the ease “without any additional testimony,” 153 U. S., at 122, reversed the Patent Office’s factual finding and awarded the patent to the other claimant. This Court in turn reversed the Circuit Court, thereby restoring the Patent Office decision.
*159 “What,” asked Justice Brewer for the Court, “is the rule which should control the [reviewing] court in the determination of this case?” Ibid. Is it that the Patent Office decision “should stand unless the testimony shows beyond any reasonable doubt that the plaintiff was the first inventor”? Id., at 123. The Court then cited two cases standing for such a “reasonable doubt” standard. Ibid, (citing Cantrell v. Wallick, 117 U. S. 689, 695 (1886), and Coffin v. Ogden, 18 Wall. 120, 124 (1874)). The Court found the two cases “closely in point.” 153 U. S., at 123. Justice Brewer wrote that a person “challenging the priority awarded by the Patent Office . . . should ... be held to as strict proof. ” Ibid. (emphasis added). The Court, pointing out that the Circuit Court had used language “not quite so strong” (namely, “a clear and undoubted preponderance of proof”), thought that the Circuit Court’s standard sounded more like the rule used by “an appellate court in reviewing findings of fact made by the trial court.” Ibid. The Court then wrote:
“But this is something more than a mere appeal. It is an application to the court to set aside the action of one of the executive departments of the government. ... A new proceeding is instituted in the courts ... to set aside the conclusions reached by the administrative department .... It is . . . not to be sustained by a mere preponderance of evidence.... It is a controversy between two individuals over a question of fact which has once been settled by a special tribunal, entrusted with full power in the premises. As such it might be well argued, were it not for the terms of this statute, that the decision of the patent office was a finality upon every matter of fact.” Id., at 124 (emphasis added).
The Court, in other words, reasoned strongly that a court/ court review standard is not proper; that standard is too strict; a somewhat weaker standard of review is appropriate.
*160 We concede that the Court also used language that could be read as setting forth a court/court standard of review. It said, for example, that the
“Patent Office [decision] must be accepted as controlling upon that question of fact . . . unless the contrary is established by testimony which . . . carries thorough conviction. ... [I]f doubtful, the decision of the Patent Office must control.” Id., at 125 (emphasis added).
It added that the testimony was “not... sufficient to produce a clear conviction that the Patent Office made a mistake.” Id., at 129 (emphasis added). But the Court did not use the emphasized words today; it used those words more than 100 years ago. And its reasoning makes clear that it meant those words to stand for a court/agency review standard, a standard weaker than the standard used by “an appellate court in reviewing findings of fact made by the trial court.” Id., at 123.
The opinions in the 89 CCPA cases, cataloged in the Appendix to this opinion, reveal the same pattern. They use words such as “manifest error” or “clearly wrong.” But they use those words to explain why they give so much, not so little, deference to agency factfinding. And, their further explanations, when given, indicate that they had court/ agency, not court/court, review in mind.
In nearly half of the eases, the CCPA explains why it uses its “manifest error” standard by pointing out that the PTO is an expert body, or that the PTO can better deal with the technically complex subject matter, and that the PTO consequently deserves deference. In more than three-fourths of the eases the CCPA says that it should defer to PTO fact-finding because two (and sometimes more) PTO tribunals had reviewed the matter and agreed about the factual finding. These reasons are reasons that courts and commentators have long invoked to justify deference to agency factfinding. See Universal Camera, 340 U. S., at 496-497 (intraagency *161 agreement); NLRB v. Link-Belt Co., 311 U. S. 584, 597 (1941) (expertise); Rochester Telephone Corp. v. United States, 307 U. S. 125, 145-146 (1939) (expertise); ICC v. Louisville & Nashville R. Co., 227 U. S. 88, 98 (1913) (expertise); Stern, 58 Harv. L. Rev., at 81-82 (expertise); 2 Davis & Pierce § 11.2, at 178-181 (intraageney agreement). They are net the reasons courts typically have given for deferring to factfinding made by a lower court judge. See, e. g., Concrete Pipe & Products of Cal., Inc. v. Construction Laborers Pension Trust for Southern Cal., 508 U. S. 602, 623 (1993); Stern, supra, at 82-83 (trial court advantages lie in, e. g., evaluation of witness, not comparative expertise). And we think it also worth noting, in light of the pre-APA movement toward standardization discussed above, supra, at 157, that the CCPA began to refer more frequently to technical complexity and agency expertise as time marched closer to 1946. Out of the 45 cases in our sample decided between 1929 and 1936, 40% (18 of 45) specifically referred to technical complexity. That percentage increased to 57% (25 of 44) for the years 1937 to 1946.
Given the CCPA’s explanations, the review standard’s origins, and the nondeterminative nature of the phrases, we cannot agree with the Federal Circuit that in 1946, when Congress enacted the APA, the CCPA “recognized” the use of a stricter court/court, rather than a less strict court/ agency, review standard for PTO decisions. Hence the Federal Circuit’s review of PTO findings of fact cannot amount to an “additional requirement] . . . recognized by law.” 5 U.S.C. §559.
III
The Federal Circuit also advanced several policy reasons which in its view militate against use of APA standards of review. First, it says that both bench and bar have now become used to the Circuit’s application of a “clearly erroneous” standard that implies somewhat stricter court/court review. It says that change may prove needlessly disrup *162 tive. 142 F. 3d, at 1457-1458. Supporting amici add that it is better that the matter remain “ ‘settled than that it be settled right.’ ” Brief for Patent, Trademark & Copyright Section of the Bar Association of the District of Columbia as Amicus Curiae 23 (quoting Square D Co. v. Niagara Frontier Tariff Bureau, Inc., 476 U. S. 409, 424 (1986)).
This Court, however, has not previously settled the matter. The Federal Circuit’s standard would require us to create §559 precedent that itself could prove disruptive by too readily permitting other agencies to depart from uniform APA requirements. And in any event we believe the Circuit overstates the difference that a change of standard will mean in practice.
This Court has described the APA eourt/agency “substantial evidence” standard as requiring a court to ask whether a “reasonable mind might aceept” a particular evidentiary record as “adequate to support a conclusion.” Consolidated Edison, 305 U. S., at 229. It has described the court/eourt “clearly erroneous” standard in terms of whether a reviewing judge has a “definite and firm conviction” that an error has been committed. United States v. United States Gypsum Co., 333 U. S. 364, 395 (1948). And it has suggested that the former is somewhat less strict than the latter. Universal Camera, 340 U. S., at 477, 488 (analogizing “substantial evidence” test to review of jury findings and stating that appellate courts must respect agency expertise). At the same time the Court has stressed the importance of not simply rubber-stamping agency factfinding. Id., at 490. The APA requires meaningful review; and its enactment meant stricter judicial review of agency factfinding than Congress believed some courts had previously conducted. Ibid.
The upshot in terms of judicial review is some practical difference in outcome depending upon which standard is used. The court/agency standard, as we have said, is somewhat less strict than the court/court standard. But the dif *163 ference is a subtle one — so fine that (apart from the present case) we have failed to uncover a single instance in which a reviewing court conceded that use of one standard rather than the other would in fact have produced a different outcome. Cf. International Brotherhood of Electrical Workers v. NLRB, 448 F. 2d 1127, 1142 (CADC 1971) (Leventhal, J., dissenting) (wrongly believing — and correcting himself — that he had found the “case dreamed of by law school professors” where the agency’s findings, though “clearly erroneous,” were “nevertheless” supported by “substantial evidence”).
The difficulty of finding such a case may in part reflect the basic similarity of the reviewing task, which requires judges to apply logic and experience to an evidentiary record, whether that record was made in a court or by an agency. It may in part reflect the difficulty of attempting to capture in a form of words intangible factors such as judicial confidence in the fairness of the factfinding process. Universal Camera, supra, at 489; Jaffe, Judicial Review: “Substantial Evidence on the Whole Record,” 64 Harv. L. Rev. 1233, 1245 (1951). It may in part refleet the comparatively greater importance of case-specific factors, such as a finding’s dependence upon agency expertise or the presence of internal agency review, which factors will often prove more influential in respect to outcome than will the applicable standard of review.
These features of review underline the importance of the fact that, when a Federal Circuit judge reviews PTO fact-finding, he or she often will examine that finding through the lens of patent-related experience — and properly so, for the Federal Circuit is a specialized court. That comparative expertise, by enabling the Circuit better to understand the basis for the PTO’s finding of fact, may play a more important role in assuring proper review than would a theoretically somewhat stricter standard.
*164 Moreover, if the Circuit means to suggest that a change of standard could somehow immunize the PTO’s fact-related "reasoning” from review, 142 F. 3d, at 1449-1450, we disagree. A reviewing court reviews an agency’s reasoning to determine whether it is “arbitrary” or “capricious,” or, if bound up with a record-based factual conclusion, to determine whether it is supported by “substantial evidence.” E. g., SEC v. Chenery Corp., 318 U. S. 80, 89-93 (1943).
Second, the Circuit and its supporting amici believe that a change to APA review standards will create an anomaly. An applicant denied a patent can seek review either directly in the Federal Circuit, see 35 U. S. C. § 141, or indirectly by first obtaining direct review in federal district court, see § 145. The first path will now bring about Federal Circuit court/agency review; the second path might well lead to Federal Circuit court/court review, for the Circuit now reviews federal district court factfinding using a “clearly erroneous” standard. Gould v. Quigg, 822 F. 2d 1074, 1077 (1987). The result, the Circuit claims, is that the outcome may turn upon which path a disappointed applicant takes; and it fears that those applicants will often take the more complicated, time-consuming indirect path in order to obtain stricter judicial review of the PTO’s determination.
We are not convinced, however, that the presence of the two paths creates a significant anomaly. The second path permits the disappointed applicant to present to the court evidence that the applicant did not present to the PTO. Ibid. The presence of such new or different evidence makes a factfinder of the district judge. And nonexpert judicial factfinding calls for the court/court standard of review. We concede that an anomaly might exist insofar as the district judge does no more than review PTO factfinding, but nothing in this opinion prevents the Federal Circuit from adjusting related review standards where necessary. Cf. Fregeau v. Mossingkojf, 776 F. 2d 1034, 1038 (CA Fed. 1985) (harmonizing review standards).
*165 Finally, the Circuit reasons that its stricter court/court review will produce better agency factfinding. It says that the standard encourages the creation of "administrative records that more fully describe the metes and bounds of the patent grant” and “help avoid situations where board fact finding on matters such as anticipation or the factual inquiries underlying obviousness become virtually unreviewable.” 142 F. 3d, at 1458. Neither the Circuit nor its supporting amici, however, have explained convincingly why direct review of the PTO’s patent denials demands a stricter fact-related review standard than is applicable to other agencies. Congress has set forth the appropriate standard in the APA. For the reasons stated, we have not found circumstances that justify an exception.
For these reasons, the judgment of the Federal Circuit is reversed. We remand the ease for further proceedings consistent with this opinion.

So ordered.

APPENDIX TO OPINION OF THE COURT
Review of 89 Pre-APA CCPA Patent Cases Reciting “Clear” or “Manifest” Error Standard
Cases Referring to both Technical Complexity/Ageney Expertise and the Agreement (Disagreement) Within the Agency
Stern v. Schroeder, 17 C. C. P. A. 670, 674, 36 F. 2d 515, 517 (1929)
In re Ford, 17 C. C. P. A. 893, 894, 38 F. 2d 525, 526 (1930) In re Demarest, 17 C. C. P. A. 904, 906, 38 F. 2d 895, 896 (1930)
In re Wietzel, 17 C. C. P. A. 1079, 1082, 39 F. 2d 669, 671 (1930)
In re Anhaltzer, 18 C. C. P. A. 1181, 1184, 48 F. 2d 657, 658 (1931)
*166 Dover v. Moody, 18 C. C. P. A. 1188, 1190, 48 P. 2d 388, 389 (1931)
In re Hornsey, 18 C. C. P. A. 1222, 1224, 48 F. 2d 911, 912 (1931)
Rowe v. Holtz, 19 C. C. P. A. 970, 974, 55 F. 2d 468, 470-471 (1932)
In re Fessenden, 19 C. C. P. A. 1048, 1050-1051, 56 F. 2d 669, 670 (1932)
Martin v. Friendly, 19 C. C. P. A. 1181, 1182-1183, 58 F. 2d 421 422 (1932)
In re Dubilier, 20 C. C. P. A. 809, 815, 62 F. 2d 374, 377 (1933)
In re Alden, 20 C. C. P. A. 1083, 1084-1085, 65 F. 2d 136, 137 (1933)
Farmer v. Pritchard, 20 C. C. P. A. 1096, 1101, 65 F. 2d 165, 168 (1933)
In re Pierce, 20 C. C. P. A. 1170, 1175, 65 F. 2d 271, 274 (1933)
Angell v. Morin, 21 C. C. P. A. 1018, 1024, 69 F. 2d 646, 649 (1934)
Daley v. Trube, 24 C. C. P. A. 964, 971, 88 F. 2d 308, 312 (1937)
Coast v. Dubbs, 24 C. C. P. A. 1023, 1031-1032, 88 F. 2d 734, 739 (1937)
Bryson v. Clarke, 25 C. C. P. A. 719, 721, 92 F. 2d 720, 722 (1937)
Brand v. Thomas, 25 C. C. P. A. 1053, 1055, 96 F. 2d 301, 302 (1938)
Creed v. Potts, 25 C. C. P. A. 1084, 1089, 96 F. 2d 317, 321 (1938)
In re Cassidy, 25 C. C. P. A. 1282, 1285, 97 F. 2d 93, 95 (1938)
Krebs v. Melicharek, 25 C. C. P. A. 1362, 1365-1366, 97 F. 2d 477, 479 (1938)
Parker v. Ballantine, 26 C. C. P. A. 799, 804, 101 F. 2d 220, 223 (1939) (disagreement)
*167 Reed v. Edwards, 26 C. C. P A. 901, 904, 101 F. 2d 550, 552 (1939)
Bill v. Casler, 26 C. C. P. A. 930, 932, 102 F. 2d 219, 221 (1939)
Tears v. Robinson, 26 C. C. P A. 1391, 1392, 104 F. 2d 813, 814 (1939)
In re Bertsch, 27 C. C. P. A. 760, 763-764, 107 F. 2d 828, 831 (1939)
In re Wuertz, 27 C. C. P. A. 1039, 1046, 110 F. 2d 854, 857 (1940)
In re Kaplan, 27 C. C. P A. 1072, 1075, 110 F. 2d 670, 672 (1940)
Prahl v. Redman, 28 C. C. P A. 937, 940, 117 F. 2d 1018, 1021 (1941)
In re Bertsch, 30 C. C. P A. 813, 815-816, 132 F. 2d 1014, 1016 (1942)
In re Stacy, 30 C. C. P A. 972, 974, 135 F. 2d 232, 233 (1943)
Poulsen v. McDowell, 31 C. C. P. A. 1006, 1011, 142 F. 2d 267, 270 (1944)
Pinkerton v. Stahly, 32 C. C. P A. 723, 728, 144 F. 2d 881, 885 (1944)
Cases Referring to Technical Complexity/Agency Expertise
In re Engelhardt, 17 C. C. P. A. 1244, 1251, 40 F. 2d 760, 764 (1930)
In re McDonald, 18 C. C. P A. 1099, 1102, 47 F. 2d 802, 804 (1931)
In re Hermans, 18 C. C. P. A. 1211, 1212, 48 F. 2d 386, 387 (1931)
In re Batcher, 19 C. C. P A. 1275, 1278, 59 F. 2d 461, 463 (1932)
In re Carlton, 27 C. C. P A. 1102, 1105, 111 F. 2d 190, 192 (1940)
Farnsworth v. Brown, 29 C. C. P. A. 740, 749, 124 F. 2d 208, 214 (1941)
*168 In re Ubbelhode, 29 C. C. P. A. 1042, 1046, 128 F. 2d 458, 456 (1942)
In re Cohen, 30 C. C. P. A. 876, 880, 183 F. 2d 924, 926 (1943)
In re Ruzicka, 32 C. C. P. A. 1165, 1169, 150 F. 2d 550, 553 (1945)
In re Allbright, 33 C. C. P. A. 760, 764, 152 F. 2d 984, 986 (1946)
Cases Referring to Agreement Within the Agency
Beidler v. Caps, 17 C. C. P. A. 703, 705, 36 F. 2d 122, 123 (1929)
Stern v. Schroeder, 17 C. C. P. A. 690, 696-697, 36 F. 2d 518, 521-522 (1929)
Janette v. Folds, 17 C. C. P. A. 879, 881, 38 F. 2d 361, 362 (1930)
In re Moulton, 17 C. C. P. A. 891, 892, 38 F. 2d 359, 360 (1930)
In re Banner, 17 C. C. P. A. 1086, 1090, 39 F. 2d 690, 692 (1930)
In re Walter, 17 C. C. P. A. 982, 983, 39 F. 2d 724 (1930)
Pengilly v. Copeland, 17 C. C. P. A. 1143, 1145, 40 F. 2d 995, 996 (1930)
Thompson v. Pettis, 18 C. C. P. A. 755, 757, 44 F. 2d 420, 421 (1930)
In re Kochendorfer, 18 C. C. P. A. 761, 763, 44 F. 2d 418, 419 (1930)
In re Dickerman, 18 C. C. P. A. 766, 768, 44 F. 2d 876, 877 (1930)
Bennett v. Fitzgerald, 18 C. C. P. A. 1201, 1202, 48 F. 2d 917, 918 (1931)
In re Doherty, 18 C. C. P. A. 1278, 1280, 48 F. 2d 952, 953 (1931)
In re Murray, 19 C. C. P. A. 766, 767-768, 53 F. 2d 540, 541 (1931)
In re Breer, 19 C. C. P. A. 929, 931, 55 F. 2d 485, 486 (1932)
*169 Robbins v. Steinbart, 19 C. C. P. A. 1069, 1072, 57 F. 2d 378, 379 (1932)
Henry v. Harris, 19 C. C. P. A. 1092, 1096-1097, 56 F. 2d 864, 866 (1932)
Fageol v. Midboe, 19 C. C. P. A. 1117, 1122, 56 F. 2d 867, 870 (1932)
Gamble v. Church, 19 C. C. P. A. 1145, 1146, 57 F. 2d 761, 762 (1932)
Thompson v. Fawick, 20 C. C. P. A. 953, 956, 64 F. 2d 125, 127 (1933)
Evans v. Clocker, 20 C. C. P. A. 956, 960, 64 F. 2d 137, 139 (1933)
In re Bloch, 20 C. C. P. A. 1180, 1183, 65 F. 2d 268, 269 (1933)
In re Snyder, 21 C. C. P. A. 720, 722, 67 F. 2d 493, 495 (1933)
Osgood v. Ridderstrom, 21 C. C. P. A. 1176, 1182, 71 F. 2d 191, 195 (1934)
Urschel v. Crawford, 22 C. C. P. A. 727, 730, 73 F. 2d 510, 511 (1934)
Marine v. Wright, 22 C. C. P. A. 946, 948-949, 74 F. 2d 996, 997 (1935)
Berman v. Rondelle, 22 C. C. P. A. 1049, 1052, 75 F. 2d 845, 847 (1935)
Tomlin v. Dunlap, 24 C. C. P. A. 1108, 1114, 88 F. 2d 727, 731 (1937)
Lasker v. Kurowski, 24 C. C. P. A. 1253, 1256, 90 F. 2d 132, 134 (1937)
In re Taylor, 25 C. C. P. A. 709, 711, 92 F. 2d 705, 706 (1937)
In re Adamson, 25 C. C. E A. 726, 729-730, 92 F. 2d 717, 720 (1937)
Adams v. Stuller, 25 C. C. E A. 865, 870, 94 F. 2d 403, 406 (1938)
Ellis v. Maddox, 25 C. C. P. A. 1045, 1053, 96 F. 2d 308, 314 (1938)
Kauffman v. Etten, 25 C. C. P. A. 1127, 1134, 97 F. 2d 134, 139 (1938)
*170 Kindelmann v. Morsbach, 25 C. C. P. A. 1344, 1349, 97 F. 2d 796, 799-800 (1938)
King v. Young, 26 C. C. P. A. 762, 771, 100 F. 2d 663, 670 (1938)
Meuer v. Schellenger, 26 C. C. P. A. 1430, 1434, 104 F. 2d 949, 952 (1939)
McBride v. Teeple, 27 C. C. P. A. 961, 972, 109 F. 2d 789, 797, cert. denied, 311 U. S. 649 (1940)
Vickery v. Barnhart, 28 C. C. P. A. 979, 982, 118 F. 2d 578, 581 (1941)
Shumaker v. Paulson, 30 C. C. P. A. 1136, 1138, 136 F. 2d 686, 688 (1943)
Paulson v. Hyland, 30 C. C. P. A. 1150, 1152, 136 F. 2d 695, 697 (1943)
Dreyer v. Haffcke, 30 C. C. P. A. 1278, 1280, 137 F. 2d 116, 117 (1943)
Cases Referring to Neither Technical Complexity/Agency Expertise nor Agreement Within the Agency
In re Schmidt, 26 C. C. P. A. 773, 777, 100 F. 2d 673, 676 (1938)
Hamer v. White, 31 C. C. P. A. 1186, 1189, 143 F. 2d 987, 990 (1944)
Kenyon v. Platt, 33 C. C. P. A. 748, 752, 152 F. 2d 1006, 1009 (1946)
Beall v. Ormsby, 33 C. C. P. A. 959, 967, 154 F. 2d 663, 668 (1946)