Vicente GARCIA–MORENO, Petitioner,

v.

**IMMIGRATION NATURALIZATION AND SERVICES, Respondent.**

No. 01–70422.

INS No. A72–987–462.

United States Court of Appeals, Ninth Circuit.

Submitted July 9, 2002.*

Decided July 16, 2002.

Before CANBY and RYMER, Circuit Judges, and BERTELSMAN,** Senior District Judge.

## MEMORANDUM ***

Vicente Garcia–Moreno, a native and citizen of Mexico, petitions for review of a decision of the Board of Immigration Appeals ("BIA") holding that he was not eligible for suspension of deportation under former § 244(a)(1) of the Immigration and Naturalization Act, 8 U.S.C. § 1254(a)(1) (1994).[1] Garcia–Moreno asserts two grounds for reversal: (1) the finding that he had not been continuously present in the United States for seven years prior to the issuance of an Order to Show Cause was not supported by substantial evidence; and (2) the stop-time rule, created by § 309(c)(5)(A) of the Illegal Immigration Reform and Individual Responsibility Act ("IIRIRA") and modified by the Nicaraguan Adjustment and Central American Relief Act ("NACARA"), violates equal protection.[2] Because we find that there was substantial evidence to support the BIA's holding and because this court has already held that the stop-time rule does not violate equal protection, we deny the petition for review.

*Garcia–Moreno's continuous presence*

To be eligible for suspension of deportation, Garcia–Moreno must show that he was continuously present in the United States for seven years immediately preceding the issuance of the Order to Show

---

* This panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2).

** The Honorable William O. Bertelsman, Senior United States District Judge for the Eastern District of Kentucky, sitting by designation.

*** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

1. Garcia–Moreno did not contest the finding that he was deportable; he was granted voluntary departure.

2. Because Garcia–Moreno's deportation proceedings were initiated before April 1, 1997, and the final order was entered after October 30, 1996, the proceedings are governed by IIRIRA's transitional rules. *See IIRIRA* §§ 306(c), 309(c).

Cause in 1994, with the exception only of brief, casual trips outside the country. *See Ram v. INS*, 243 F.3d 510, 513–16 (9th Cir.2001). The IJ and the BIA found that Garcia–Moreno failed to establish his continuous presence in the United States prior to 1990.[3]

As evidence of his presence in the United States from 1986 until 1989, Garcia–Moreno submitted the following: two affidavits from individuals who stated that he worked for them in California at various times during this period; a notarized "verification of residence" from a woman who stated that she lived downstairs from her parents in California during this time; a statement by a man in Modesto, California that he had known Garcia–Moreno for six years; receipts for wages from a lawn care business for the autumn months in 1986, 1987 and 1988; and a letter from a priest stating that Garcia–Moreno had been a member of his parish since 1986.

The IJ did not find this evidence to be convincing. The documents were prepared long after the events to which they attested, and came primarily from Garcia–Moreno's friends. The wage receipts did not correspond to anything on the forms he had filled out describing his work since entering the United States. The priest who wrote that Garcia–Moreno was a member of the church had, himself, been at the parish only since 1991 or 1992.

In addition, the IJ noted the disparity between the considerable documentation of Garcia–Moreno's presence in the United States from 1990 on and the meager documentation of his presence during the 1986–89 period. Finally, the IJ did not find it credible that Garcia–Moreno left the United States for just one month to marry a woman who had never been to the United States. The BIA agreed with the IJ's findings on Garcia–Moreno's continuous presence.

A reasonable finder of fact could interpret the evidence as failing to show that Garcia–Moreno was in the United States continuously during the period from 1986 until 1989. *See Dickinson v. Zurko*, 527 U.S. 150, 162, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999). Thus, Garcia–Moreno did not prove his continuous presence for the necessary seven years before 1994 and his challenge to the finding of statutory ineligibility fails.

*Equal Protection*

Garcia–Moreno contends that the stop-time rule in IIRIRA § 309(c)(5)(A), as modified by NACARA § 203, violates equal protection by exempting aliens from certain specified countries, not including Mexico.[4] This contention was squarely rejected by this court in *Ram*, 243 F.3d at 517, and we accordingly reject it here.

PETITION FOR REVIEW DENIED.

3. Factual findings of the BIA are reviewed on a substantial evidence standard, "requiring a court to ask whether a reasonable mind might accept a particular evidentiary record as adequate to support [the BIA's] conclusion." *Dickinson v. Zurko*, 527 U.S. 150, 162, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999). A reviewing court should "deny the petition for review unless the evidence not only supports a contrary result, but compels it." *Espinoza–Castro v. INS*, 242 F.3d 1181, 185 (9th Cir. 2001).

4. Line-drawing decision made by Congress and the President in the immigration context are required to meet only the rational basis standard of scrutiny. *Ram*, 243 F.3d at 517. Thus, the statute will be upheld if it is rationally related to a legitimate governmental purpose. *Id.*